UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAO VANG, et al.,

        Plaintiffs,

    v.                                        Case No.  05-C-1285

PRIMERICA LIFE INS. CO.,

        Defendant.

---

**MEMORANDUM DECISION AND ORDER**

---

      Plaintiffs, the beneficiaries of a life insurance policy issued by defendant Primerica, filed a claim for benefits following the untimely death of Mai Nhia Lor ("Lor"), the late wife of plaintiff Chao Vang and mother of the other plaintiffs.  Upon completion of its investigation, Primerica denied the claim and rescinded the policy on the ground that Lor had omitted material facts about her health in her application for coverage.  Plaintiffs then brought this action in state court alleging the defendant was in breach of contract when it denied coverage for the death of Lor.  Asserting federal jurisdiction based on diversity of citizenship and an amount in controversy in excess of $75,000, Primerica  removed the case to federal court pursuant to 28 U.S.C. § 1441(a).  Primerica has now moved for summary judgment, and the plaintiffs have filed a cross-motion and response. For the reasons given below, both motions for summary judgment will be DENIED.

**I. BACKGROUND**

      The plaintiffs are a Hmong family from Kaukauna, Wisconsin.  In 2000, Lor visited her physician, Dr. Russo, and was diagnosed with anemia.  She was subsequently hospitalized for

anemia and received a blood transfusion. In 2002, she returned to Dr. Russo and was diagnosed with panic disorder, which Dr. Russo believed was linked to Lor's worries about her earlier anemia diagnosis.

In 2002 Vang and Lor, both of whom had limited proficiency in English, purchased a Primerica life insurance policy from Mailor Lor, an independent agent who spoke both Hmong and English. Primerica is a Massachusetts corporation with its principal of business in Georgia. The application for coverage included the standard litany of health questions, but for present purposes the most crucial question was: "In the last 5 years, have you been treated for or had any indication of . . . Anemia or any other disorder of the blood?" (Def. Appx., Ex. 2 at 5.) Despite her recent anemia diagnosis and treatment, Lor answered "no." Based on Lor's satisfactory application, Primerica issued a life insurance policy effective January 22, 2003.

Lor died on April 20, 2004 from complications resulting from chemotherapy treatment she was undergoing for acute myeloid leukemia. (It is not alleged that her death had anything to do with anemia.) When the plaintiffs submitted their claim for benefits, Primerica denied the claim on the ground that its research revealed Lor's treatment for severe anemia in 2000. "Had our Underwriting Department known of the severe iron deficiency anemia with no underlying cause," Primerica explained, "the coverage would not have been issued." (Def. Appx., Ex. 3.) As already noted, Primerica does not contend, at least in its motion seeking summary judgment, that Lor's death was in any way related to her anemia; it claims merely that Lor had failed to disclose a condition that was material to Primerica's decision to issue the policy in the first place. Other facts are discussed below where relevant.

2

## II. ANALYSIS

Although the insurance policy states that *any* erroneous information may be grounds for voiding the policy, Wisconsin law provides a markedly more restrictive standard. Under Wis. Stat. § 631.11(b):

> No misrepresentation . . . constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless . . . the person knew or should have known that the representation was false, and unless any of the following applies:
>
> 1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive. . . .

Thus, under the statute, the insurer may not rescind a policy or deny an otherwise valid claim unless the false representation was relied upon and was either material or intentionally deceptive. Wis. Stat. § 631.11(b).

The evidence is disputed as to whether Lor knew or should have known that her answer to the anemia question was false. Primerica does not attempt to argue that the misrepresentation was made "with intent to deceive," but it points out that the agent who completed the application with Lor spoke Hmong and translated the questions for her. Plaintiffs, on the other hand, suggest that the concept of anemia is not readily conveyed in the Hmong language. If true, it might mean that Lor would not have known her "no" answer was false. But, perhaps because that line of argument would almost certainly involve disputed factual circumstances, *see Pum v. Wisconsin Physicians Service Ins. Corp.,* 2007 WI App 10, 2006 WL 3783136, *4 (Wis. Ct. App. 2006) ("whether the statement was false, and whether the person making the statement knew, or should have known, that the statement was false, are questions of fact for the jury."), the parties focus primarily on the materiality issue.

3

Case 1:05-cv-01285-WCG   Filed 03/06/07   Page 3 of 8   Document 37

To be material, a misrepresentation must have invoked the insurer's reliance and must have related to a fact significant or essential to the insurer's decision to issue coverage. *Pum.,* 2007 WI App 10, 2006 WL 3783136, *6. Generally, the question of whether a misrepresentation was material is a question of fact. *Tomlinson v. MidAmerica Mut. Life Ins. Co.,* 483 N.W.2d 234, 238 (Wis. Ct. App. 1992) ("Whether a misrepresentation is material is a question of fact that should be presented to the jury. . . . Therefore, whether MidAmerica's coverage is void on these grounds is a factual matter that we cannot decide.") Despite the courts' repeated recognition that materiality is a jury question, both sides believe they are entitled to summary judgment.

**1. Plaintiffs' Motion for Summary Judgment**

The plaintiffs believe summary judgment in their favor is appropriate because the defendant's own records demonstrate without question that it would have issued the policy even if it had received a "yes" answer to the anemia question. In particular, the plaintiffs rely on what they view as an error in the defendant's August 19, 2004 letter denying benefits as well as an inconsistency based on Primerica's own internal correspondence.

First, in the benefits denial letter Primerica sent to the plaintiffs, it noted that Lor had answered "no" to the anemia question and stated that "had our Underwriting Department known of the severe iron deficiency <u>with no underlying cause</u>, the coverage would not have been issued." (Def. Appx., Ex. 3) (emphasis added). Plaintiffs believe this basis for denial does not accurately reflect Lor's anemia condition because Lor did not have anemia "with no underlying cause." In support, they cite an affidavit from Lor's physician, Dr. Russo, in which he states that the cause of the anemia was a hiatal hernia and reflux esophagitis. (Modl Aff., Tab 9.) Lor's condition was treated and resolved by the time she applied for life insurance, and her diagnosis in 2002 was panic

4

disorder, not anemia. Dr. Russo states that had Primerica contacted him while the application was under review, he would have told them that Lor did not have iron deficiency anemia "with no underlying cause." Thus, in the plaintiffs' view, Primerica's stated reason for denying benefits does not correspond to Lor's actual medical condition at the time she applied, which means that Primerica cannot claim it would have rejected Lor's application in the first place.

Primerica takes issue with Dr. Russo's affidavit, noting that it comes some four years after treatment, is inconsistent with his conclusions at the time, and nevertheless still does not conclusively establish the cause of Lor's anemia. Even without accepting these criticisms, however, I would be unable to conclude that the discrepancy the plaintiff cites establishes, as a matter of law, that Lor's undisclosed anemia treatment was immaterial. At worst, Primerica's more recent belief that the anemia had "no underlying cause" was simply an error on its part; it certainly does not show conclusively that Primerica would have issued the policy had it known the true nature of Lor's anemia, nor does it show that the true information was immaterial. Recall that the context of the present dispute requires us to recreate the situation at the time Lor applied for life insurance in 2002; thus, an erroneous basis for denying coverage in 2004 says nothing about the materiality of accurate anemia information at issue in 2002. Accordingly, the fact that Primerica's denial letter may have erred in assessing Lor's medical condition cannot constitute grounds for summary judgment in plaintiffs' favor.

Second, plaintiffs cite Primerica's own internal review process, which they believe shows that if Lor had answered "yes" to the anemia question, the application would not have been *denied,* but merely subjected to further inquiry. After Lor died and plaintiffs submitted their claim, Primerica's claims department forwarded Lor's medical records to its underwriting department and

5

inquired how the application would have been affected if Primerica had known about Lor's anemia. The underwriting department responded that Lor would have been uninsurable at the time of the application, but it further noted that "we would have postponed the application based on history of severe anemia until the underlying cause is found." (Riley Aff., Tab 5) (emphasis added). In the plaintiffs' view, this demonstrates conclusively that if Lor had answered "yes" to the anemia question, Primerica would have held her application in abeyance until the underlying cause for the anemia was found. And, because Dr. Russo's affidavit establishes that the underlying cause *had* been found as of 2000, plaintiffs believe that Primerica would simply have contacted Dr. Russo and would have learned the cause of her anemia. It would have issued the policy soon thereafter. Thus, in the plaintiffs' view, Lor's misrepresentation was just an immaterial bump in the otherwise smooth road to coverage.

Although Primerica's underwriting correspondence does suggest that it would have postponed issuing the policy and further investigated the cause of Lor's anemia, it does not establish beyond doubt that Primerica would have automatically *issued* the policy as soon as the cause was found. Nor does it establish that the anemia was immaterial, i.e., not "related to a fact significant or essential to the insurer's decision to issue coverage." *Pum,* 2007 WI App 10, 2006 WL 3783136, *6. In fact, the underwriting department's conclusion that further investigation was warranted is agnostic as to the significance of Lor's anemia. Although Primerica might well have investigated and then issued the policy despite the anemia, I cannot conclude that such a result would be inevitable. It is plausible to assume that some causes of anemia would be grounds for denial of an application, while others would be more benign and would not preclude acceptance of the application; the underwriting department's correspondence merely recognizes that the company

6

would not take any action on the application – either granting or denying it – without more information. In sum, plaintiffs have shown that Primerica's own documents do not support Primerica's claim that Lor's application would have been denied outright. Moreover, the documents suggest perhaps that a diagnosis of anemia would have been grounds for further investigation rather than denial. But the documents plaintiffs cite do not go so far as to demonstrate, as a matter of law, that Lor's condition was immaterial (i.e., insignificant) to Primerica's decision to issue coverage. Accordingly, the plaintiffs' motion for summary judgment will be denied.

**2. Primerica's Motion for Summary Judgment**

Although the evidence the plaintiffs cite does not suffice to justify granting summary judgment in their favor, it does suggest that genuine issues of fact remain on the question of materiality, and nothing in Primerica's motion suggests that the materiality question may be resolved in its favor at this stage. Primerica's motion for summary judgment argues that Dr. Russo has no experience in underwriting and cannot speak to whether Lor's anemia records would have been material to the decision to issue a life insurance policy. Although that is perhaps true, it does not mean the opinion of the insured's treating physician must be wholly disregarded. Since Primerica's own records suggest that it would have undertaken further investigation had Lor answered "yes" to the anemia question, and since Dr. Russo would have been the logical person to ask about her diagnosis at the time, his affidavit is relevant to the materiality of the misrepresentation.

Primerica also attacks Russo's affidavit as being inconsistent with his earlier diagnosis. In particular, it claims that he had written in 2000 that Lor's anemia was "most likely secondary to upper GI blood loss." (Rusinyak Aff., F-7.) By qualifying his opinion with the phrase "most

7

likely," Primerica argues, Dr. Russo was conceding at the time that the cause of the anemia was not conclusive. Yet even if there is some level of inconsistency, all that shows is that a dispute exists as to the nature of Lor's anemia prior to her application for life insurance. It does not conclusively demonstrate, in other words, that Lor's misrepresentation was material.

Ultimately, when the central question involves assessing the materiality of information the insurer did not actually know at the time it issued the policy, it will usually be difficult to resolve that question via summary judgment. Here, the evidence on both sides suggests that the misrepresentation was significant enough to justify further inquiry – as might be expected with any "yes" answer on a life insurance application – but perhaps not so significant that Primerica would have rejected the application once it obtained further information. Whether the misrepresentation was "material" is a question to be resolved by the factfinder, not through summary judgment. Accordingly, both motions for summary judgment are **DENIED**. The clerk shall contact the parties and set this matter on the court's calendar for trial.

**SO ORDERED** this   6th   day of March, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge